UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| ENVIROTECH CHEMICAL SERVICES, INC.<br><br>     Plaintiff,<br><br>v.<br><br>CLEAN CHEMISTRY, INC.,<br><br>     Defendant. | Case No. 1:24-cv-1313<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff EnviroTech Chemical Services, Inc., by and through its undersigned counsel, brings this action for patent infringement against Clean Chemistry, Inc., and alleges as follows:

## PARTIES

1.    EnviroTech Chemical Services, Inc. ("EnviroTech"), is a corporation organized and existing under the laws of the State of California, having a principal place of business at 500 Winmoore Way, Modesto, California 95358.

2.    Defendant Clean Chemistry, Inc. ("Clean Chemistry" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 6107 S. Country Road 1273, Midland, Texas 79706.

1

## FACTUAL ALLEGATIONS

### Background of EnviroTech

3.     EnviroTech develops and manufactures chemical solutions, focusing on safe and effective antimicrobial formulations. For more than 30 years, EnviroTech has serviced several industries, including industrial water treatment, meat and poultry processing, agriculture, oil and gas, and wastewater treatment.

4.     EnviroTech has a storied reputation as an industry-leading innovator of peracetic acid, which is an environmentally friendly and versatile disinfectant.

5.     In connection with its research and development and efforts to improve its peracetic acid solutions, EnviroTech has developed innovative processes, reagents, and intermediate solutions, including those protected by the valid and subsisting United States patents referenced below.

### Jurisdiction and Venue

6.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331, 1338(a).

7.     Personal jurisdiction exists generally over Clean Chemistry because Clean Chemistry is a corporation organized and existing under the laws of the State

of Delaware, with a principal place of business in the Western District of Texas

("District").

8.      Venue is proper in this Court under 28 U.S.C. § 1391 as well as 28

U.S.C. § 1400(b) because Clean Chemistry resides in the District, where Clean

Chemistry is a corporation organized under the laws of the State of Delaware with

a principal place of business in the District. Clean Chemistry committed at least

one act of infringement in this District, and has a physical location in the District

from which it conducts business. Furthermore, a substantial part of the events or

omissions giving rise to the claims pleaded herein occurred within the District, or a

substantial part of property that is the subject of this action is situated within the

District.

### The Patents-in-Suit

9.      EnviroTech is the owner of the entire right, title, and interest in and to

U.S. Patent No. 8,546,449 (the "'449 Patent"), entitled "Methods and

Compositions for the Generation of Peracetic Acid On Site at the Point-Of-Use,"

which was duly issued by the United States Patent and Trademark Office on

October 1, 2013. A copy of the '449 Patent is attached as Exhibit A.

10.     EnviroTech is the owner of the entire right, title, and interest in and to

U.S. Patent No. 9,363,997 (the "'997 Patent"), entitled "Methods and

Compositions for the Generation of Peracetic Acid On Site at the Point-Of-Use,"

which was duly issued by the United States Patent and Trademark Office on June 14, 2016. A copy of the '997 Patent is attached as Exhibit B.

11.     EnviroTech is the owner of the entire right, title, and interest in and to U.S. Patent No. 9,730,443 (the "'443 Patent"), entitled "Methods and Compositions for the Generation of Peracetic Acid On Site at the Point-Of-Use," which was duly issued by the United States Patent and Trademark Office on August 15, 2017. A copy of the '443 Patent is attached as Exhibit C.

12.     EnviroTech is the owner of the entire right, title, and interest in and to U.S. Patent No. 9,737,072 (the "'072 Patent"), entitled "Methods and Compositions for the Generation of Peracetic Acid On Site at the Point-Of-Use," which was duly issued by the United States Patent and Trademark Office on August 22, 20217. A copy of the '072 Patent is attached as Exhibit D.

13.     On May 20, 2024, EnviroTech sent a letter to Clean Chemistry informing Clean Chemistry of the '449 Patent, the '997 Patent, the '443 Patent, and the '072 Patent, also requesting that Clean Chemistry cease and desist all infringing activities. A copy of the May 20, 2024 letter is attached as Exhibit E.

### Defendant's Wrongful Conduct

14.     Clean Chemistry manufactures, uses, imports, offers for sale, and/or sells peracetic acid products under the Clean Chemistry trade name throughout the

United States. Said products directly compete against the offerings from EnviroTech.

15.     Defendant, under the Clean Chemistry name, has been and is currently making, using, offering for sale, importing, selling, and/or distributing products that infringe at least one claim of the '449 Patent, the '997 Patent, the '443 Patent, and the '072 Patent.

16.     Defendant offers for sale certain peracetic acid products that infringe EnviroTech's rights including by way of example, but not limited to, PeroxyMAX ("Accused Product"). (*See*, Exhibit F - https://cleanchemi.com/peroxymax) (hereinafter "Product Webpage").

17.     On information and belief, Defendant manufactures the Accused Product according to the process set forth in Defendant's Environmental Assessment for Food Contact Notification FCN 2352 submitted to the United States Food and Drug Administration on February 1, 2024 ("Accused Process"). (*See*, Exhibit G - https://www.fda.gov/media/177359/download) (hereinafter "FCN").

18.     As detailed below, Defendant has directly infringed one or more claims of the '449 Patent, the '997 Patent, the '443 Patent, and the '072 Patent by intentionally developing, making, using, marketing, advertising, providing,

Case 1:24-cv-01313-DII   Document 1   Filed 10/29/24   Page 6 of 24

sending, importing, distributing, and/or selling the Accused Product, which is manufactured according to the Accused Process.

## A.     The '449 Patent

19.    The Accused Process includes all elements of, for example, claim 1 of the '449 Patent.

20.    By way of example, claim 1 of the '449 Patent recites "[a] method of generating non-equilibrium solution of peracetic acid."

21.    The FCN states that "the [food contact substance] is prepared in a non-equilibrium process that produces [peracetic acid]." (Exhibit G, page 9).

On-demand generation of the FCS eliminates the need to incorporate a stabilizer such as 1-hydroxyethylidene-1, 1-diphosphonic acid (HEDP) in the formulation. As described below, the FCS is prepared in a non-equilibrium process that produces PAA that is immediately applied in the desired concentration. No stabilizers are contained in this FCS since it is produced and used on-demand.

**Figure 1**

22.    The food contact substance referred to in the FCN is the Accused Product, which is a peracetic acid (PAA) solution. Thus, in stating that "the FCS is prepared in a non-equilibrium process that produces PAA," the FCN specifies that the method disclosed therein is utilized to form a non-equilibrium peracetic acid.

23.    The food contact substance referred to in the FCN is the Accused Product, which is a peracetic acid (PAA) solution. Thus, in stating that "the FCS is prepared in a non-equilibrium process that produces PAA," the FCN specifies that the method disclosed therein is utilized to form a non-equilibrium peracetic acid.

6

24.     Claim 1 of the '449 Patent further recites the step of "providing water."

25.     The first step in the Accused Process is to provide water to be the base of the Accused Product solution. For example, the FSN states that "[w]ater is fed into [a] generator/mixer" as the first process step. (Exhibit G, page 9).

**a. Process Step 1: Preparation of the alkaline substrate**

Water is fed into the generator/mixer followed by concentrated sodium hydroxide providing the alkaline environment needed for the next steps.

**Figure 2**

26.     Claim 1 of the '449 Patent further recites the step of "introducing a hydrogen peroxide-triacetin solution to the water."

27.     The Accused Process also requires addition of hydrogen peroxide and triacetin. For example, the FSN states that, in Step 2 "hydrogen peroxide is blended into the mixture's alkaline solution" and, in Step 3 "under continuous agitation, triacetin is added to the process." (Exhibit G, pages 9-10).

**b. Process Step 2: Addition of hydrogen peroxide**

$$2NaOH + H2O2 \rightarrow Na2O2 + 2H2O$$

Next, hydrogen peroxide is blended into the mixer's alkaline solution and forms an alkaline peroxide solution.

**Figure 3**

7

**c. Process Step 3: Addition of triacetin**



| Triacetin | Hydrogen peroxide | Sodium hydroxide | Peracetic acid | Monoacetin | Sodium acetate | Glycerol |

In the next step, under continuous agitation, triacetin is added to the process. Triacetin rapidly reacts with the alkaline peroxide to form an aqueous mixture of PAA. Alkaline pH (pH>10) is used to accelerate the reaction since the hydrogen peroxide anion is a much better nucleophile than hydrogen peroxide. Both the hydrogen peroxide anion, $O_2^{2-}$ and $HO^-$ compete in the reaction with triacetin's acetyl groups, the former producing a PAA and the latter producing acetate. The reaction takes place at ambient temperature and pressure.

**Figure 4**

28.     The Accused Process which separately adds hydrogen peroxide and triacetin is equivalent to "introducing a hydrogen peroxide-triacetin solution." Whether the hydrogen peroxide and triacetin are introduced separately or as a pre-made solution is insubstantia. Thus, separately adding hydrogen peroxide and triacetin is equivalent to "introducing a hydrogen peroxide-triacetin solution" because it performs substantially the same function in substantially the same way to produce substantially the same result.

29.     Claim 1 of the '997 Patent further recites the step of "mixing the triacetin and the aqueous hydrogen peroxide with the water to form a mixture."

30.     Claim 1 of the '449 Patent further recites the step of "mixing the hydrogen peroxide-triacetin solution and the water to form a mixture."

31.     The FCN detailing the accused process states that "hydrogen peroxide is blended into the mixture's alkaline solution" and "under continuous agitation, triacetin is added to the process." (Exhibit G, pages 9-10; Figures 3-4). The "blending" of hydrogen peroxide and addition of triacetin "under continuous agitation" necessarily forms a mixture of the ingredients.

32.     Claim 1 of the '449 Patent further recites the step of "adding an aqueous source of an alkali metal or early alkali metal hydroxide to the mixture."

33.     The FCN also describes that the Accused Process includes the step of adding "concentrated sodium hydroxide providing an alkaline environment" to the water. (Exhibit G, page 9; Figure 1). Sodium hydroxide is most commonly used in chemical manufacturing as an aqueous solution and is an alkali metal hydroxide.

34.     Claim 1 of the '449 Patent further recites the step of "forming a reaction medium comprising a non-equilibrium solution of peracetic acid."

35.     When the sodium hydroxide, hydrogen peroxide, and triacetin are all present in the water-based solution, the "[t]riacetin rapidly reacts with the alkaline peroxide to form an aqueous mixture of PAA," where PAA is defined to mean peracetic acid. (Exhibit G, page 10).

The reaction medium that is formed in this step almost instantaneously forms a non-equilibrium solution of PAA. The hydrogen peroxide reacts with triacetin, the acetyl precursor, to form peracetic acid.

**Figure 5**

9

36.    The Accused Process which first adds sodium hydroxide to water and subsequently adds hydrogen peroxide and triacetin is equivalent to "adding an aqueous source of an alkali metal or earth alkali metal hydroxide to the mixture." The order in which the sodium hydroxide and the hydrogen peroxide and triacetin is insubstantial. First adding sodium hydroxide to water and then subsequently adding hydrogen peroxide and triacetin is equivalent to "adding an aqueous source of an alkali metal or earth alkali metal hydroxide to the mixture" because it performs substantially the same function in substantially the same way to produce substantially the same result. Switching the order that sodium hydroxide is combined with hydrogen peroxide, triacetin, and water for reaction to form a non-equilibrium solution of peracetic acid will result in the sodium hydroxide performing substantially the same function in substantially the same way to produce substantially the same result.

B.    The '997 Patent

37.    The Accused Process includes all the steps of, for example, claim 1 of the '997 Patent.

38.    By way of example, claim 1 of the '997 Patent recites "[a] method of generating non-equilibrium solution of peracetic acid."

39.    The FCN states that "the [food contact substance] is prepared in a non-equilibrium process that produces PAA," which is defined to mean peracetic

10

acid (Exhibit G, page 9; Figure 1). The food contact substance referred to in the FCN is the Accused Product, which is a peracetic acid (PAA) solution. Thus, in stating that "the FCS is prepared in a non-equilibrium process that produces PAA," the FCN specifies that the method disclosed therein is utilized to form a non-equilibrium peracetic acid.

40.    Claim 1 of the '997 Patent further recites the step of "providing water."

41.    The first step in the Accused Process is to provide water to be the base of the Accused Product solution. For example, the FSN states that "[w]ater is fed into [a] generator/mixer" as the first process step. (Exhibit G, page 9; Figure 2).

42.    Claim 1 of the '997 Patent further recites the step of "introducing triacetin and aqueous hydrogen peroxide to the water."

43.    The Accused Process also requires addition of hydrogen peroxide and triacetin. For example, the FSN states that, in Step 2 "hydrogen peroxide is blended into the mixture's alkaline solution" and, in Step 3 "under continuous agitation, triacetin is added to the process." (Exhibit G, pages 9-10; Figures 3-4).

44.    Claim 1 of the '997 Patent further recites the step of "mixing the triacetin and the aqueous hydrogen peroxide with the water to form a mixture."

45.    The FCN detailing the accused process states that "hydrogen peroxide is blended into the mixture's alkaline solution" and "under continuous agitation,

11

triacetin is added to the process." (Exhibit G, pages 9-10; Figures 3-4). The "blending" of hydrogen peroxide and addition of triacetin "under continuous agitation" necessarily forms a mixture of the ingredients.

46.   Claim 1 of the '997 Patent further recites the step of "adding an aqueous source of an alkali metal or early alkali metal hydroxide to the mixture."

47.   The FCN also describes that the Accused Process includes the step of adding "concentrated sodium hydroxide providing an alkaline environment" to the water. (Exhibit G, page 9; Figure 1). Sodium hydroxide is most commonly used in chemical manufacturing as an aqueous solution and is an alkali metal hydroxide.

48.   Claim 1 of the '997 Patent further recites the step of "forming a reaction medium comprising a non-equilibrium solution of peracetic acid."

49.   When the sodium hydroxide, hydrogen peroxide, and triacetin are all present in the water-based solution, the "[t]riacetin rapidly reacts with the alkaline peroxide to form an aqueous mixture of [peracetic acid]," (Exhibit G, page 10; Figure 5).

50.   The Accused Process which first adds sodium hydroxide to water and subsequently adds hydrogen peroxide and triacetin is equivalent to "adding an aqueous source of an alkali metal or earth alkali metal hydroxide to the mixture." The order in which the sodium hydroxide and the hydrogen peroxide and triacetin is insubstantial. First adding sodium hydroxide to water and then subsequently

adding hydrogen peroxide and triacetin is equivalent to "adding an aqueous source of an alkali metal or earth alkali metal hydroxide to the mixture" because it performs substantially the same function in substantially the same way to produce substantially the same result. Switching the order that sodium hydroxide is combined with hydrogen peroxide, triacetin, and water for reaction to form a non-equilibrium solution of peracetic acid will result in the sodium hydroxide performing substantially the same function in substantially the same way to produce substantially the same result.

C.    The '443 Patent

51.     The Accused Product includes all elements of, for example, claim 1 of the '443 Patent.

52.     By way of example, claim 1 of the '443 Patent recites "[a] non-equilibrium solution of peracetic acid."

53.     The FCN states that "the [food contact substance] is prepared in a non-equilibrium process that produces PAA," where PAA is defined to mean peracetic acid. (Exhibit G, page 9). The FCN therefore describes a method of forming a non-equilibrium peracetic acid.

54.     Claim 1 of the '443 Patent further recites that the solution comprises "peracetic acid."

13

55.     When the sodium hydroxide, hydrogen peroxide, and triacetin are all present in the water-based solution, the "[t]riacetin rapidly reacts with the alkaline peroxide to form an aqueous mixture of [peracetic acid]," (Exhibit G, page 10; Figures 4-5). The resulting solution formed by the process described in the FCN includes peracetic acid.

56.     Claim 1 of the '443 Patent further recites that the solution comprises "hydrogen peroxide."

57.     In formulating the Accused Product, "hydrogen peroxide is blended into the mixture[]." (Exhibit G, page 9; Figure 4). The Accused Product, the resulting peracetic acid solution, therefore includes hydrogen peroxide because a chemical formulation comprises all of its reagents.

58.     Claim 1 of the '443 Patent further recites that the solution comprises "triacetin."

59.     In formulating the Accused Product, "under continuous agitation, triacetin is added to the process." (Exhibit G, page 9; Figure 4). The Accused Product, the resulting peracetic acid solution, therefore includes triacetin because a chemical formulation comprises all of its reagents.

60.     Claim 1 of the '443 Patent further recites that the solution comprises "1,2,3-propanetriol."

61.    The FCN describes that, after the reaction between the sodium hydroxide, hydrogen peroxide, and triacetin are reacted, glycerol is a reaction product in the peracetic acid solution. (Exhibit G, page 10; Figure 4). The International Union of Pure and Applied Chemistry (IUPAC) name for glycerol is 1,2,3-propanetriol.

62.    Claim 1 of the '443 Patent further recites that the solution comprises "an aqueous source of an alkali metal or earth alkali metal hydroxide."

63.    Formulating the Accused Product, as described in the FCN, includes the step of adding "concentrated sodium hydroxide providing an alkaline environment" to the solution. (Exhibit G, 9; Figure 4). the Accused Product, the resulting peracetic acid solution, therefore includes sodium hydroxide because a chemical formulation comprises all of its reagents.

64.    Claim 1 of the '443 Patent further recites that the solution comprises "water."

65.    The Accused Product, manufactured according to the process described in the FCN, is "an aqueous mixture of [peracetic acid]." (Exhibit G, page 10). Water is inherent in an aqueous solution, and the first step of the FCN process is providing water as the basis for the reaction between the sodium hydroxide, hydrogen peroxide, and triacetin. (Exhibit G, page 9).

15

D.    The '072 Patent

66.    Defendant has directly infringed one or more claims of the '072 Patent, by intentionally developing, making, using, marketing, advertising, providing, sending, importing, distributing and/or selling the Accused Product.

67.    The Accused Process includes all elements of, for example, claim 1 of the '072 Patent.

68.    By way of example, claim 1 of the '072 Patent recites "[a] hydrogen peroxide-acetyl precursor solution."

69.    The FCN states that "the [food contact substance] is prepared in a non-equilibrium process that produces [peracetic acid]." (Exhibit G, page 9). In preparing the peracetic acid solution, the Accused Process necessarily includes formation of a hydrogen peroxide-acetyl precursor solution that ultimately reacts to form peracetic acid. (Exhibit G, pages 9-10).

70.    Claim 1 of the '072 Patent further recites that the solution comprises "aqueous hydrogen peroxide."

71.    In formulating the hydrogen peroxide-acetyl precursor solution, the FCN states "hydrogen peroxide is blended into the mixer's alkaline solution." (Exhibit G, page 9). Hydrogen peroxide is most commonly used in chemical manufacturing in an aqueous form.

16

72.     Claim 1 of the '072 Patent further recites that the solution comprises "triacetin."

73.     In formulating the Accused Product, "under continuous agitation, triacetin is added to the process." (Exhibit G, page 9; Figure 4). The Accused Product, the resulting peracetic acid solution, therefore includes triacetin because a chemical formulation comprises all of its reagents.

74.     Claim 1 of the '072 Patent further recites that the solution comprises "a trace amount of peracetic acid."

75.     Upon mixing sodium hydroxide, hydrogen peroxide, and triacetin, "the reaction medium that is formed at this step almost instantly forms a non-equilibrium solution of [peracetic acid]." (Exhibit G, page 10). Because of the immediacy of the chemical reaction, the hydrogen peroxide-acetyl precursor solution necessarily includes at least trace amounts of peracetic acid.

76.     Claim 1 of the '072 Patent further recites that the solution comprises "water."

77.     The Accused Product, manufactured according to the process described in the FCN, is "an aqueous mixture of [peracetic acid]." (Exhibit G, page 10). Water is inherent in an aqueous solution, and the first step of the FCN process is providing water as the basis for the reaction between the sodium hydroxide, hydrogen peroxide, and triacetin. (Exhibit G, page 9).

17

## COUNT I

### Infringement of U.S. Patent No. 8,546,449

78.     EnviroTech incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

79.     Defendant has infringed and is currently infringing, literally and/or under the doctrine of equivalents, the '449 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '449 Patent, including but not limited to the Accused Product and/or the Accused Process.

80.     Upon information and belief, Defendant has had actual notice of its infringement of the '449 Patent since at least May 20, 2024, as evidenced by Exhibit E, but in any event, no later than the date of this Complaint.

81.     Having actual notice of EnviroTech's patent, the infringement by the Defendant of the '449 Patent continues to be willful and deliberate, and, therefore, EnviroTech is entitled to damages, including enhanced damages, under 35 U.S.C. § 284.

82.     As a direct and proximate result of the infringement of the '449 Patent by Defendant, EnviroTech has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. EnviroTech also has been

18

damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II

### Infringement of U.S. Patent No. 9,363,997

83.    EnviroTech incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

84.    Defendant has infringed and is currently infringing, literally and/or under the doctrine of equivalents, the '997 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '997 Patent, including but not limited to the Accused Product and/or the Accused Process.

85.    Upon information and belief, Defendant has had actual notice of its infringement of the '997 Patent since at least May 20, 2024, as evidenced by Exhibit E, but in any event, no later than the date of this Complaint.

86.    Having actual notice of EnviroTech's patent, the infringement by the Defendant of the '997 Patent continues to be willful and deliberate, and, therefore, EnviroTech is entitled to damages, including enhanced damages, under 35 U.S.C. § 284.

87.     As a direct and proximate result of the infringement of the '997 Patent by Defendant, EnviroTech has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. EnviroTech also has been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT III

### Infringement of U.S. Patent No. 9,730,443

88.     EnviroTech incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

89.     Defendant has infringed and is currently infringing, literally and/or under the doctrine of equivalents, the '443 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '443 Patent, including but not limited to the Accused Product and/or the Accused Process.

90.     Upon information and belief, Defendant has had actual notice of its infringement of the '443 Patent since at least May 20, 2024, as evidenced by Exhibit E, but in any event, no later than the date of this Complaint.

91.     Having actual notice of EnviroTech's patent, the infringement by the Defendant of the '443 Patent continues to be willful and deliberate, and, therefore,

20

EnviroTech is entitled to damages, including enhanced damages, under 35 U.S.C.

§ 284.

92.     As a direct and proximate result of the infringement of the '443 Patent

by Defendant, EnviroTech has suffered and will continue to suffer irreparable

injury for which there is no adequate remedy at law. EnviroTech also has been

damaged and, until an injunction issues, will continue to be damaged in an amount

yet to be determined.

## COUNT IV

### Infringement of U.S. Patent No. 9,737,072

93.     EnviroTech incorporates by reference each of the foregoing

paragraphs as though fully set forth herein.

94.     Defendant has infringed and is currently infringing, literally and/or

under the doctrine of equivalents, the '072 Patent by, among other things, making,

using, selling, offering for sale, and/or importing within this judicial district and

elsewhere in the United States, without license or authority, products and/or

processes that infringe one or more claims of the '072 Patent, including but not

limited to the Accused Product and/or the Accused Process.

95.     Upon information and belief, Defendant has had actual notice of its

infringement of the '072 Patent since at least May 20, 2024, as evidenced by

Exhibit E, but in any event, no later than the date of this Complaint.

96.     Having actual notice of EnviroTech's patent, the infringement by the Defendant of the '072 Patent continues to be willful and deliberate, and, therefore, EnviroTech is entitled to damages, including enhanced damages, under 35 U.S.C. § 284.

97.     As a direct and proximate result of the infringement of the '072 Patent by Defendant, EnviroTech has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. EnviroTech also has been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## JURY DEMAND

EnviroTech requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, EnviroTech requests that the Court enter the following in its favor and against Defendant as follows:

A.     A judgment in favor of EnviroTech on all of its claims against Defendant;

B.     A judgment that Defendant has violated 35 U.S.C. § 271 by infringing, directly or indirectly, and literally, or under the doctrine of equivalents,

one or more claims of the '449 Patent, the '997 Patent, the '180 Patent, the '443 Patent, and the '072 Patent.

C.    A judgment awarding EnviroTech damages adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, in an amount to be determined at trial;

D.    A judgment that Defendant's patent infringement has been and continues to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

E.    A judgment declaring that this is an exceptional case and awarding EnviroTech its actual costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285;

F.    A judgment that Defendant and its respective officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them are enjoined, preliminarily and permanently, from further infringement of the '449 Patent, the '997 Patent, the '180 Patent, the '443 Patent, the '072 Patent, and the '230 Patent;

G.    A judgment awarding EnviroTech pre-judgment and post-judgment interest; and

H.    A judgment awarding such further, equitable or other relief as the Court deems just and proper.

23

Dated: October 29, 2024                    Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**
*/s/ Michael J. Woodson*
Michael J. Woodson
Texas State Bar No. 24084117
98 San Jacinto Blvd, Suite 1600
Austin, Texas 78701
Telephone: 512.721.2770
Facsimile:  713.654.1301
michaelwoodson@eversheds-sutherland.com

Ann G. Fort (*pro hac vice forthcoming*)
Georgia State Bar No. 269995
Lindsay M. Kriz (*pro hac vice forthcoming*)
Georgia State Bar No. 624085
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309
Telephone: 404.853.8000
Facsimile: 404.853.8806
annfort@eversheds-sutherland.com
lindsaykriz@eversheds-sutherland.com

***Attorneys for Plaintiff EnviroTech
Chemical Services, Inc.***